# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| **ESTHER D. J.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 5:20-CV-239** |
| | § | |
| **KILOLO KIJAKAZI, Acting** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

Before the Court are Plaintiff Esther D. J.'s[1] and Defendant Kilolo Kijakazi's cross-motions for summary judgment. (Dkt. Nos. 18, 23). Plaintiff brings this action for judicial review of the Commissioner of the Social Security Administration's (the "Commissioner" or "SSA") final decision denying her claims for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. (Dkt. No. 1). For the reasons set forth below, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment, (Dkt. No. 18), **DENY** Defendant's Motion for Summary Judgment, (Dkt. No. 23), and thereby **REVERSE** and **REMAND** the Commissioner's decision for further proceedings consistent with this Report and Recommendation.[2]

## I. Introduction

On December 11, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits, and on December 13, 2018, Plaintiff filed an application for supplemental security income under Title II and XVI of the Social Security Act. (Dkt.

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] In their cross-motion, Defendant argues that an award of benefits is unwarranted. (Dkt. No. 23 at 10). Plaintiff has not requested a benefits award in her motion for summary judgment. (Dkt. No. 18-1 at 14). Therefore, the Court declines to consider such relief.

Nos. 13-3 at 11, 13-5 at 3–6, 13-8 at 2–3). Plaintiff alleged disability since October 23, 2018, due to depression, high blood pressure, and rheumatoid arthritis. (Dkt. No. 13-4 at 5). The SSA initially denied Plaintiff's claims on February 13, 2019, and upon reconsideration on April 15, 2019. (Dkt. No. 13-5 at 7, 14, 23–26). Plaintiff then filed a written request for a hearing by an Administrative Law Judge ("ALJ"). (*Id*. at 27–28).

On October 28, 2019, the ALJ conducted a video teleconference hearing. (Dkt. No. 13-3 at 11). The ALJ heard testimony from Plaintiff and a vocational expert ("VE"), Jennifer Maginnis. (*Id*. at 30–51). On January 31, 2020, the ALJ issued a Notice of Decision denying Plaintiff's applications for disability benefits. (*Id*. at 8, 23). The ALJ found, "[T]he claimant has not been under a disability within the meaning of the Social Security Act from October 23, 2018, through the date of this decision[.]" (*Id*. at 12). Plaintiff appealed the ALJ's decision to the SSA's Appeals Council. (*Id*. at 2). On August 10, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (*Id*. at 2, 6).

The ALJ's decision represents the Commissioner's final decision in Plaintiff's case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) ("SSA regulations provide that, if . . . the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision."). Following the Appeals Council's denial, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1).

## II. Legal Standard

Summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When parties file cross-motions for summary judgment, we review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

The Court's review of a final decision of the Commissioner on a social security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review of social security disability cases 'is limited to two inquiries: (1)

whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive." *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (citations and internal quotations omitted). The Court "may not reweigh the evidence . . ., nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (citations and internal quotations omitted).

**III. Discussion**

The cross-motions for summary judgment present a single issue:[3] whether substantial evidence supports the ALJ's residual function capacity ("RFC") determination. For the reasons discussed below, the Court finds the ALJ's RFC determination lacks substantial evidence, and that remand is warranted.

"A claimant bears the burden of proving that he or she suffers from a disability[.]" *Perez*, 415 F.3d at 461. The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity means "work activity involving significant physical or mental abilities for pay or profit." *Perez*, 415 F.3d at 461 (citation and internal quotations omitted).

---

[3] In their motion, Defendant states that the issues before the Court are (1) "whether the Commissioner applied the correct legal standards[,]" and (2) "whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled the meaning of the Act." (Dkt. No. 23 at 1). However, neither side appears to question—and nor do they brief—whether the ALJ applied the proper legal standards. (*See, e.g.*, *id.* at 4–10; Dkt. No. 25 at 1–4). Therefore, the Court declines to address this issue.

In considering a disability claim, an ALJ must conduct a five-step evaluation that examines:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to [her] old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citations omitted). While the claimant maintains the burden of proof for the first four steps, the burden shifts to "the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Id.* (citations omitted). "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (citation and internal quotations omitted).

"A finding that a claimant is disabled . . . at any point in the five-step review is conclusive and terminates the analysis." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citation and internal quotations omitted). However, if no such finding can be made at any one step, the Commissioner moves on to the next step. 20 C.F.R. § 404.1520(a). Before moving from step three to step four, the Commissioner determines the claimant's RFC, which is "a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)). The Commissioner uses the claimant's RFC at steps four and five to determine if the claimant can still do his past relevant work and determines whether the claimant can adjust to any other type of work. *Id.* (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ addressed all five steps of the sequential process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 23, 2018, the alleged onset date. (Dkt. No. 13-3 at 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: rheumatoid arthritis, high blood pressure, depression, and anxiety. (*Id.* at 14). At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.

(*Id*.). The ALJ then assessed Plaintiff's RFC and found she could perform light work with the following limitations:

> She could occasionally handle with the right upper extremity. She could occasionally stoop, crouch, crawl, kneel, balance, and climb stairs. However, there can be no ladders or heights. She can carry out detailed, but not complex instructions. [Plaintiff] has mild to moderate chronic pain, which is of sufficient severity to be noticeable to her at all times, but she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily. [Plaintiff] takes medication for her symptoms, but the medications do not preclude her from functioning at the level indicated, and she would remain reasonably alert to perform required functions presented by her work setting.

(*Id*. at 16).

At step four, the ALJ further determined that the Plaintiff was unable to perform past relevant work. (*Id*. at 21). At step five, the ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 22). Namely, the ALJ found Plaintiff could perform work as a Counter Clerk, Rental Clerk, or Bakery Worker. (*Id*.). The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 22–23).

**A. The RFC Determination is Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination lacks substantial evidence because it is unsupported by any medical opinion. (Dkt. No. 18-1 at 9). Specifically, Plaintiff argues that the ALJ determined Plaintiff's RFC by relying "on his lay interpretations of Plaintiff's medical conditions and determined Plaintiff's functional limitations based on nothing more than raw medical data." (*Id*. at 9–10). The ALJ, Plaintiff notes, rejected the opinions of the state agency medical examiners that there was "insufficient evidence" to evaluate Plaintiff's claims and rejected the opinions of Licensed Professional Counselor ("LPC") Jose Gonzalez, who addressed her limitations and her ability to work. (*Id*.). Without these, Plaintiff argues the ALJ was obligated to "develop the record and secure another medical opinion instead of interpreting the medical impairments by himself." (*Id*. at 11–13). His failure to do so, therefore, means his RFC determination lacks substantial evidence.[4] (*Id*. at 13–14).

---

[4] Plaintiff also takes issue with the ALJ's finding that "LPC Gonzalez's mental status report was

In response, Defendant argues that the ALJ used the entire record to reach the RFC determination. (Dkt. No. 23 at 8). Defendant points out that at several points throughout Plaintiff's medical records, her mental status was noted as being within normal limits, that prescribed medication was effective, and that therapy was working as a successful change agent. (*Id.* at 6–7). Defendant further argues that because Plaintiff's mental impairments responded to treatment, they cannot form the basis of a disability claim under the Act.[5] (*Id.* at 6). Additionally, Defendant contends that a counselor, such as Gonzalez, is not an acceptable medical source under the governing regulations. (*Id.* at 7). Overall, Defendant asserts that the ALJ had no reason to seek evidence beyond the record. (*Id.* at 5–8). Defendant states that the RFC determination does not directly correspond to any individual medical opinion but argues it need not do so. (*Id.* at 9). Finally, Defendant stresses that Plaintiff had the burden to produce sufficient evidence—medical and otherwise—to establish disability. (*Id.*).

It is the province of the ALJ to weigh all relevant evidence and determine the claimant's RFC. *See Taylor*, 706 F.3d at 602–03; *Perez*, 415 F.3d at 462. However, "the Fifth Circuit has made clear that an ALJ 'may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.'" *Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *7 (S.D. Tex. Aug. 11, 2021), *R. & R. adopted sub nom.*, *Liguez v. Comm'r of Soc. Sec.*, No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021) (citing cases); *see Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (stating that an ALJ "may not rely on his own

---

not fully consistent because the medical evidence showed improvement." (Dkt. No. 18-1 at 12). The Court may not reweigh the evidence. *See Johnson v. Colvin*, 595 F. App'x at 444. Moreover, the extent to which his opinions were consistent with other medical evidence is not dispositive of the issue presented before the Court. Therefore, the Court declines to reach this question.

[5] Defendant relies on *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990), for this proposition. (Dkt. No. 23 at 6). However, a closer reading of *Johnson* reveals it is inapposite. First, the *Johnson* Court discussed the application of Medical-Vocational Guidelines at the fifth step, not the procedural question at issue in this case. 894 F.2d at 684–86. Second, the underlying cases that *Johnson* cites stand for a narrower proposition: "*pain, in and of itself*, can be a disabling condition under the Act, but only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (emphases added) (citing cases). Here, Plaintiff is claiming disability based on rheumatoid arthritis, depression, anxiety, and high blood pressure, not "pain in and of itself." (Dkt. No. 13-3 at 14).

unsupported opinion as to the limitations presented by the applicant's medical conditions"). Numerous courts within the Fifth Circuit have held that an RFC determination lacks substantial evidence where it is not supported by any medical opinion and is, instead, based on the ALJ's lay interpretation of raw medical data. *See, e.g.*, *Brian K. L. v. Comm'r of Soc. Sec.*, No. 4:20-CV-2810, 2022 WL 902641, at *3–6 (S.D. Tex. Mar. 28, 2022) (holding RFC determination lacked substantial evidence where ALJ rejected all available opinion evidence, cited raw medical data, and made his own judgments about claimant's RFC); *Lopez v. Saul*, No. SA-19-CV-01088-ESC, 2020 WL 4934462, at *4–6 (W.D. Tex. Aug. 22, 2020) (same); *Garcia v. Berryhill*, No. EP-17-CV-00263-ATB, 2018 WL 1513688, at *2–4 (W.D. Tex. Mar. 27, 2018) (same); *Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D. Tex. 2017) (same). The ALJ committed a similar error in this case.

Here, the ALJ rejected the only available medical opinion regarding Plaintiff's mental limitations. LPC Gonzalez opined that Plaintiff had difficulties with concentration, focus, distractibility, and responding to change.[6] (*See, e.g.*, Dkt. Nos. 13-3 at 30, 13-12 at 10, 18, 75–77). He also opined that Plaintiff should be "taken out of work" until May 2019, and slowly returned to her regular work schedule. (Dkt. No. 13-12 at 5). However, the ALJ rejected LPC Gonzalez's opinions. (Dkt. No. 13-3 at 20). Assuming *arguendo* that ALJ had good cause to reject his opinions, there was no remaining medical opinion to support the ALJ's RFC determination.

Regarding mental limitations, the ALJ concluded Plaintiff could perform light work and could "carry out detailed, but not complex instructions," and that "she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily." (Dkt. No. 13-3 at 16). However, the ALJ relied on Plaintiff's "mental health records," which included mental health status examination notes and medical diagnoses. (*See, e.g.*, Dkt. Nos. 13-3 at 18–20, 13-10 at 60, 62, 81, 13-

---

[6] Under current SSA regulations, a therapist like LPC Gonzalez may still offer a "medical opinion," even if he is not an "acceptable medical source." *See* 20 C.F.R. § 404.1502 ("Medical source means an individual who is licensed as a healthcare worker by a State[.]"); § 404.1513 ("A medical opinion is a statement from a *medical source*[.]"); SSR 06-03p., 2006 WL 2263437, at *45594 (Aug. 9, 2006) (defining "medical sources who are not 'acceptable medical sources'" to include therapists); *see also Lopez*, 2020 WL 4934462, at *6 (describing LPC's opinions as "medical opinions").

11 at 10, 16–17). From these records, he concluded that nothing "preclude[d] the [Plaintiff] from carrying out detailed, but not complex instruction." (Dkt. No. 13-3 at 18). But the record is devoid of any medical opinion evidence supporting the ALJ's determination of "'the effect [Plaintiff's] condition had on [her] ability to work.'" *Ramirez v. Saul*, No. 4:18-CV-2504, 2020 WL 1853749, at *4 (S.D. Tex. Apr. 12, 2020) (quoting *Ripley*, 67 F.3d at 557) (alterations in original). Based on the materials cited and the absence of other medical opinions in the record, the Court concludes that the ALJ arrived at the mental RFC determination using his own lay interpretation of raw medical data.[7] *See, e.g.*, *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL 4138406, at *5–7 (S.D. Tex. Sept. 10, 2021) (finding no substantial evidence where ALJ rejected only medical opinions and formulated his own RFC, even though his findings were "largely supported by the medical records"); *Lopez*, 2020 WL 4934462, at *4–6 (finding no substantial evidence where ALJ rejected medical opinions of LPC and doctor and relied on raw medical data, such as treatment notes).

As to physical limitations, the ALJ determined Plaintiff could perform light work, that she "could occasionally handle with the right upper extremity," and that she could "occasionally stop, crouch, crawl, knee, balance, and climb stairs. However, there can be no ladders or heights." (Dkt. No. 13-3 at 16). But again, there is no medical opinion evidence to support this RFC determination. Instead, the ALJ merely relied on medical records regarding the severity of Plaintiff's conditions. (*See* Dkt. No. 13-3 at 17–18). In

---

[7] Defendant cites *Taylor v. Astrue* in support of the argument that the ALJ's interpretation of medical evidence is "actually the ALJ properly interpreting the medical evidence to determine Plaintiff's capacity for work." (Dkt. No. 23 at 9). However, *Taylor* is readily distinguishable. As one district court explained:

> In *Taylor*, the claimant took issue with the ALJ discounting the opinions of "medical personnel who have treated Taylor since the onset of his pain." Unlike the present case, in which there is no medical opinion on the impact of [Plaintiff's] subsequent medical developments, Taylor had medical experts who opined on each of the claimant's issues and their impact on the claimant's capacity for work. The claimant's primary issue with the ALJ's decision in *Taylor* was that the ALJ discounted medical opinion favorable to the claimant. And, as this Court has stated, the ALJ is free to discount or reject medical opinion given that there is sufficient evidence in the record to support the ALJ's conclusion. But in the present case, there is no medical opinion on [Plaintiff's] MRI or her medical developments following Dr. James' medical opinion.

*Moore v. Saul*, No. 3:20CV161-MPM-JMV, 2022 WL 987735, at *2 (N.D. Miss. Mar. 31, 2022) (cleaned up). For similar reasons, the Court finds Defendant's invocation of *Taylor* unpersuasive.

other words, there was no medical opinion "supporting the ALJ's determination of what Plaintiff *can* do." *Ramirez*, 2020 WL 1853749, at *3–4 (citation omitted) (emphasis in original). Thus, it appears the ALJ simply relied on the underlying raw medical data and interpreted it to reach his own conclusion as to what Plaintiff's limitations were to support his RFC determination. *See, e.g.*, *id.* at 3–4; *Garcia*, 2018 WL 1513688, at *2–4.

In summary, having reviewed the record—as a whole and as cited by the ALJ[8]— the ALJ did precisely what he could not do: he rejected the available medical opinion, used his lay interpretation of the raw medical data, and imposed a less restrictive RFC. *See, e.g.*, *Williams*, 355 F. App'x at 831–32, 832 n.6 (remanding when ALJ rejected all available medical opinions and "rel[ied] on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *McCullough v. Berryhill*, No. 18-cv-128, 2019 WL 1431124, at *13–15 (W.D. Tex. Mar. 29, 2019) (remanding when record lacked any medical opinion, ALJ failed to develop the record by obtaining a "medical source statement," and used his own lay opinions to set the RFC); *Beachum v. Berryhill*, No.: 1:17-cv-00095-AWA, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) (remanding where ALJ rejected all medical opinions regarding physical impairments, no medical opinions existed regarding physical impairments, cited raw medical data, and formed her own RFC); *Lopez*, 2020 WL 4934462, at *4–6. In other words, the ALJ "succumb[ed] to the temptation to play doctor." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citation omitted). But as Judge Posner warned: "Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Id.* (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990) (Posner, J.)). This Court finds that the ALJ's RFC determination lacks substantial evidence. *See, e.g.*, *McCullough*, 2019 WL 1431124, at *13–15; *Beachum*, 2018 WL 4560214, at *4; *Lopez*, 2020 WL 4934462, at *4–6. However, that does not end the Court's inquiry.

---

[8] Relying on *Webster v. Kijakazi*, 19 F.4th 715 (5th Cir. 2021), Defendant argues that the ALJ's decision need not directly correspond to a medical opinion because the record "as a whole" supports his determination. (*See* Dkt. No. 23 at 8–9). This argument fails for two reasons. First, as discussed above, while the record contains evidence of the severity of Plaintiff's conditions, "[w]hat the record does not clearly establish is the effect [Plaintiff's] condition had on [her] ability to work." *Ripley*, 67 F.3d at 557. Second, *Webster* is distinguishable because, in that case, the state agency made findings regarding the plaintiff's limitations and the ALJ "incorporated" those findings into plaintiff's RFC. 19 F.4th at 719–20. In this case, there were no medical opinions regarding Plaintiff's limitations for the ALJ to incorporate.

### B. The ALJ's Error Prejudiced Plaintiff

"Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Accordingly, a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Id.* In other words, a Plaintiff must "demonstrate prejudice resulting from the ALJ's errors." *Allen*, 2020 WL 5412630, at *7 (citing cases). "A claimant establishes prejudice by showing that the ALJ could have reached a different outcome but for the error in question." *Deborah S. v. Comm'r of Soc. Sec.*, No. 4:20-CV-1580, 2021 WL 4442514, at *6 (S.D. Tex. Sept. 28, 2021) (citing *Newton*, 209 F.3d at 458); *see Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) ("A claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision.").

The ALJ's error prejudiced Plaintiff. Regarding her mental limitations, LPC Gonzalez opined that Plaintiff was more limited than the ALJ ultimately found. The ALJ prejudiced Plaintiff by rejecting this opinion and, without a separate supporting medical opinion, imposing a less restrictive RFC. *See, e.g.*, *Beachum*, 2018 WL 4560214, at *5 (finding prejudice where ALJ rejected medical opinion assigning more restrictive limitations than those found by ALJ); *Garcia*, 2018 WL 1513688, at *3 (same). Similarly, regarding her physical limitations, there was evidence that Plaintiff was still suffering from rheumatoid arthritis and that it was not responding to treatment. (*See, e.g.*, Dkt. Nos. 13-11 at 27, 42, 13-13 at 16). The Court also finds it notable that the ALJ rejected the state agency medical examiner's opinion that the evidence was "insufficient" to determine the severity of Plaintiff's physical or mental impairments. (Dkt. No. 13-3 at 20). Finally, the Court observes that, at the hearing, Plaintiff testified she was more limited than the ALJ ultimately found and the VE's testimony did not provide for the limitations the ALJ ultimately found. (*See Id.* at 35–50). Given the available evidence, the ALJ "could have reached a different disability determination had she fully developed the record and obtained an expert medical opinion regarding the effects that" Plaintiff's conditions "had on [her] ability to work." *Fitzpatrick v. Colvin*, No. 3:15-CV-3202-D, 2016

WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016). Therefore, remand is warranted.

## IV. Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment, (Dkt. No. 18), **DENY** Defendant's Motion for Summary Judgment, (Dkt. No. 23), **REVERSE** the Commissioner's decision, and **REMAND** the case for further administrative proceedings consistent with this Report and Recommendation.

## V. Notice of Right to Object

Within fourteen days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review de novo those portions of the Report or specified proposed findings or recommendations to which the party objects. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996). The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. 28 U.S.C. § 636(b)(1)(C). The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). If a party does not object within fourteen days, the party forfeits its right to District Court review. *Thomas*, 474 U.S. at 150.

Failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice. *Douglass*, 79 F.3d at 1428.

**SIGNED** on August 3, 2022.

_____
John A. Kazen
United States Magistrate Judge